## New York Life Ins. Co. v. McQuie et al.

March 7, 1939.

JOSEPH J. HANCOCK, Judge.

WILLIAM MARSHALL BULLITT, LEO T. WOLFORD and EUGENE B. COCHRAN for appellants.

TILFORD & WETHERBY for appellees.

OPINION OF THE COURT BY JUDGE REES—Reversing.

On January 30, 1917, the New York Life Insurance Company issued to Margaret G. McQuie a life insurance policy effective as of January 25, 1917. The policy was for $1,000 and the annual premium was $40.89, payable in advance on January 25th of each year for 20 years. In her application the insured stated the date of her birth as November 21, 1878, and her age at the time her application was made as 38. The names of the beneficiaries in the policy were changed from time to time, but at the time of the insured's death the beneficiaries named in the policy were her two sons, Robert Glenn McQuie and Frank Glenn McQuie. The insured died December 16, 1935, and the beneficiaries made demand on the insurance company for payment of the face amount of the policy, plus the accumulations thereon. The insurance company declined to pay the amount demanded, but tendered to each of the beneficiaries the sum of $479.02, or a total of $958.04, the amount it claimed to be due. Thereupon the beneficiaries brought this action to recover $1,000 the face value of the policy,

plus the dividends and interest accumulated thereon, amounting to $300.29, or a total of $1,300.29. The policy issued to Mrs. McQuie contained the following clause: "If the age of the insured has been misstated, the amount payable hereunder shall be such as the premium paid would have purchased at the correct age."

In its answer the insurance company relied upon this clause, and alleged that the insured, in the written application for the policy signed by her, stated that she was born November 21, 1878, and that she was 38 years of age when the application was signed, when in fact she was born January 21, 1864, and was 52 years of age at the time the application was made. It was further alleged that the annual premium of $40.89 would have purchased at the age of 52 insurance in the amount of only $659; that the dividends and interest thereon amounted to $299.04, making a total amount due on the policy of $958.04, and the defendant offered to confess judgment for that amount. On motion of the plaintiffs, the defendant was required to file with its answer the policy of insurance and the application therefor. A reply completed the issues, and, upon the trial of the case before a jury, a verdict was returned in favor of the plaintiffs for $1,300.29, the full amount claimed by them. The defendant has appealed.

The amount in controversy is $342.25. The sole issue in the case is whether Mrs. Margaret G. McQuie was 38 years old or 52 years old on January 25, 1917, the date of the policy. By a stipulation signed by the attorneys for the parties, it was agreed that the amount of the premium on the policy was based upon the assumption that the age of the insured at her nearest birthday was 38, as stated in the application, and upon the assumption that she was born November 21, 1878; that the premium of $40.89 would have purchased $659 in insurance if she had been born January 21, 1864, and the accumulated dividends and interest thereon would be $299.04, or a total of $958.04. It was further agreed that if the insured's age was correctly stated in her application, the plaintiffs were entitled to receive $1,300.29, with interest from December 23, 1935.

Appellant argues that the judgment should be reversed because the trial court erred in rejecting and admitting evidence; in overruling appellant's motion for a directed verdict in its favor; and because the verdict is flagrantly against the weight of the evidence.

Robert Glenn McQuie, Frank Glenn McQuie, and Miss Elizabeth Walsh were the only witnesses introduced by the plaintiffs. Robert Glenn McQuie testified that he was born August 8, 1891, and was 46 years old at the time of the trial, though he told an agent of the insurance company on December 19, 1935, the day the proofs of death were filled out, that he was 37 years old and his brother Frank was 35. His father and mother separated when he was 4 years old, and his mother obtained a divorce in 1901. He believed his father to be dead until the latter's deposition was taken by the defendant in St. Louis, Missouri, a few days before the trial. Frank Glenn McQuie testified that he was born September 1, 1893. He had always been under the impression that he was much younger, but he had recently examined his baptismal records and learned the correct date of his birth. Miss Elizabeth Walsh had known Mrs. McQuie about 15 years, and visited in her home frequently. She testified that Mrs. McQuie was youthful looking in appearance, was a very active woman, a hard worker, and did all of her housework. She also stated that Mrs. McQuie "seemed to me in her fifties," but the court properly sustained an objection to this statement. The plaintiffs also introduced in evidence the application for the policy. The defendant introduced the marriage license clerk of Jefferson county who produced a marriage bond book which contained a marriage bond signed by Frank R. McQuie, as principal, and J. K. Harrison, as surety. The bond was dated June 11, 1890, and recited that marriage was intended to be solemnized between Frank R. McQuie and Maggie Glenn. The marriage register was introduced which showed that Frank R. McQuie and Maggie Glenn were married by A. J. Harnist at Louisville, Kentucky, June 12, 1890. There was also introduced in evidence the following from the baptismal register of the Cathedral of the Assumption, Louisville, Kentucky:

"January 24, 1864: I baptized Margaret the daughter of Jno Glynn and Mary Ruder his wife, born the 21st. Sprs. Michael Glynn and Sevina Larner.

"H. I. Brady."

It was shown that the father of Margaret Glenn McQuie, the insured, was John Glenn, and that her mother's maiden name was Mary Ryder. Appellees insist that the baptismal record has no evidentiary value

as tending to show that it was a record of the baptism of Margaret Glenn, later Margaret Glenn McQuie, since it states the child baptized was the daughter of John Glynn and Mary Ruder. The names are strikingly similar, and, when the record is read in connection with the other evidence in the case, is very persuasive that the Margaret referred to was Margaret Glenn, the daughter of John Glenn and Mary Ryder, his wife. The baptismal records of the plaintiffs, Robert Glenn McQuie and Frank Glenn McQuie, as they appeared in the baptismal register of the Church of Our Lady in Louisville, were introduced in evidence. Robert McQuie's certificate of baptism reads as follows:

"This is to Certify that Robert Glenn McQuie Child of Francis Robert McQuie and Margaret Glynn born in Louisville Kentucky on the 8th day of August 1891 was Baptized According to the Rite of the Roman Catholic Church by the Rev. A. J. Harrist the Sponsors being Marty McQuie and Catherine Glynn as appears from the Baptismal Register of this Church.''

The certificate of baptism of Frank Glenn McQuie shows that he was christened Francis Lee McQuie, child of Francis Robert McQuie and Margaret Glynn. It will be noted that in these baptismal records made in 1891 and 1893 the insured's family name was spelled G-l-y-n-n.

In the physician's statement signed by Dr. A. J. Pauli and filed with the proofs of death, the insured's age was stated as 73. Dr. Pauli testified that the insured had a stroke of apoplexy November 10, 1935, and that he never knew her before that time. No one told him her age, and when he made out the statement to be filed with the proofs of death, he put down her age as 73, but that was a mere guess. He didn't know whether she was 50 or 70. The deposition of Frank R. McQuie was read. He testified that he was born in Louisville, Kentucky, in 1860, and met Margaret Glenn in 1880. She was then attending school in Louisville. They were married June 12, 1890, at the Church of Our Lady in Louisville by Rev. Harnist, a Catholic priest. Miss Sadie McQuie, a sister of Frank R. McQuie, testified that she was present at the marriage of her brother and Margaret Glenn on June 12, 1890. Her brother was 30 years old. She did not know Margaret Glenn's age at the time of the marriage, but she was a grown woman. The de-

fendant offered to prove by Frank R. McQuie that Margaret Glenn was 16 years of age when he met her in 1880. She first told him she was 14, but later said she had made a mistake and that she was 16. He went with her 10 years after that, and married her in 1890 when she was 26.

The court refused to admit any of this testimony except the statement of the witness that he went with her for 10 years before the marriage. We think this evidence was admissible. A well-recognized exception to the hearsay rule relates to family tradition or pedigree. In Bertram v. Witherspoon's Adm'r, 138 Ky. 116, 127 S. W. 533, Ann. Cas. 1912A, 1217, statements of a deceased person concerning his age, where that was the issue, were held admissible. To the same effect are Benham v. Kentucky Central Life & Accident Insurance Company, 240 Ky. 169, 38 S. W. (2d) 954; Travelers' Insurance Company v. Henderson Cotton Mills, 120 Ky. 218, 85 S. W. 1090, 27 Ky. Law Rep. 653, 117 Am. St. Rep. 585, 9 Ann. Cas. 162; Wigmore on Evidence, sections 1480 and 1490. For the same reason the statement of the insured in the application was properly admitted in evidence. The statement was made before any controversy arose, and there is no evidence of a state of facts existing at that time to which any bias on the part of the declarant is to be attributed. The rule that such a statement, to be receivable, must have been made ante litem motam was not violated by its admission. It is argued that the declarant had an interest to misrepresent, in that she was obtaining insurance at a lower rate, and therefore the statement should not have been admitted, but the mere possibility of a bias or a desire to misrepresent is not sufficient to exclude such a statement. Greenleaf on Evidence, Volume 1, Section 114 E. The plaintiffs offered to introduce the depositions of the two deceased sisters of Mrs. McQuie taken in the divorce case in 1901 in which they gave their ages as 29 and 25, respectively. Their testimony in that case, if true, tended to substantiate the claim that Mrs. McQuie was born in 1878. These depositions were clearly incompetent and were properly excluded.

We are not prepared to say that the court erred in overruling appellant's motion for a directed verdict in its favor, as there was some evidence, though slight, tending to show that the age of the insured was stated correctly in the application. We have no hesitancy,

274

however, in saying that the verdict is flagrantly against the weight of the evidence. The overwhelming weight of the evidence was that Mrs. McQuie was born in 1864. It is conceded that she was married on June 12, 1890, and that her first child was born August 8, 1891, and her second child September 1, 1893. If she was born in 1878, as stated in the application, she was married at the age of 11½ years, her first child was born before she was 13 years of age, and her second child before she was 15.

For the reasons indicated, the motion for an appeal is sustained, the appeal granted, and the judgment reversed, with directions to grant appellant a new trial, and for further proceedings consistent herewith.